Estate of Anna R. D. Gillespie, Deceased, Mabel Lindsay Gillespie, John G. Buchanan and Mellon National Bank and Trust Company, Executors v. Commissioner.
Estate of Anna R. D. Gillespie v. Commissioner
Docket No. 20256.
United States Tax Court
1949 Tax Ct. Memo LEXIS 69; 8 T.C.M. (CCH) 875; T.C.M. (RIA) 49237; September 29, 1949
David B. Buerger, Esq., 1025 Union Trust Bldg., Pittsburgh 19, Pa., and John G Buchanan, Jr., for the petitioners. Charles R. Johnston, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $282,041.29 in estate tax. The issues for decision are (1) whether the value of a one-fourth interest in the residuary estate given to charities, for the purpose of a deduction under section 812(d), is the amount which the charities *70 actually get under the Pennsylvania law or a lesser amount arrived at by assuming that all estate taxes will come out of the residuary estate and taking one-fourth of what is left as the value of the charitable bequests, and (2) whether the value of an inter vivos trust should be included in the gross estate under section 811(c). Findings of Fact Anna R. D. Gillespie, a widow, died on April 20, 1944 while residing in Pittsburgh, Pennsylvania. The estate tax return was filed with the collector of internal revenue for the twenty-third district of Pennsylvania. The decedent was survived by her only child, an unmarried daughter, Mabel Lindsay Gillespie, born July 28, 1886. The decedent disposed of her estate by a will and a codicil. She left property to Mabel and property to or in trust for others in Articles One and Two. Article Four provided for the disposition of the residuary estate of which the charities were to have one-fourth. Article Nine provided in part as follows: "I direct that all estate, inheritance and transfer taxes now or hereafter imposed in respect to the devises and bequests made by Articles One and Two of this will shall be paid out of the residue of my *71 estate devised and bequeathed by Article Four, so that the beneficiaries mentioned in the said Articles One and Two shall receive their devises and bequests without diminution." The decedent had property worth about $7,000,000 and Mabel had property worth about $4,500,000 on May 14, 1940. They lived together. The decedent, on that date, created an irrevocable trust and transferred $250,000 to the trustee. The income of the trust was to be paid quarterly to Mabel during her life. The deed provided: "* * * The said Mabel Lindsay Gillespie, if she survives the Grantor, is hereby empowered to dispose by will of the principal of the Fund in any manner which she may think proper; and in default of such disposition, upon her death, the principal of the Fund shall be transferred and set over to [a named charity]." Article Three of the deed of trust is as follows: "In the event that any payment of income hereinabove directed to be made to Mabel Lindsay Gillespie shall in the opinion of the Trustee be insufficient to defray the expenses of any illness, accident or other emergency or to provide for the proper maintenance, support, comfort and well-being of the said Mabel Lindsay Gillespie *72 and the member of her immediate family, the Trustee in its discretion is authorized to use from time to time so much of the principal of the Fun as may be necessary to defray expenses due to any emergency or to provide for the proper maintenance, support, comfort and well-being of the said beneficiary and members of her immediate family." The trust deed was prepared by the bank named as trustee. The transfer in trust was not made by the decedent in contemplation of death. The grantor did not intend to include herself in the phrase "members of her immediate family" used in Article Three of the deed of trust. The Commissioner, in determining the deficiency, allowed as a deduction for the one-fourth of the residuary estate bequeathed to charity one-fourth of the residuary estate after deducting the Federal estate taxes, and he included the value of the May 14, 1940 trust in the gross estate. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The Commissioner argues that the Pennsylvania law, providing that charitable bequests are not to be reduced by a share of the Federal estate taxes unless the testator clearly provides that they *73 are to bear a share, has no application and he disagrees with the decision of this Court in , which is directly against him on this point. It was there held that a deduction for a percentage of the residuary estate left to charity was to be determined without subtracting Federal estate taxes and the Pennsylvania case of , was relied upon in reaching the decision. Those cases are controlling here. The Commissioner argues, in the alternative, that the decedent by implication provided that the charities' shares should pay a share of the taxes. The petitioner's position is that the taxes on the bequests and devises made in Articles One and Two, but no more, are to be paid out of the residuary estate before computing the amount of the charitable bequests. The answer to this question depends upon a proper interpretation of the will. There is nothing in the will or codicil which expressly or by implication provides for payment of taxes on the residuary estate. Therefore, the Pennsylvania rule is that the charitable bequests, upon which there is no Federal estate tax, shall bear *74 no part of that tax. The Commissioner contends that the transfer of May 14, 1940 was in contemplation of death not because of the condition of the decedent's health but because she wanted to provide for Mabel only after the death of the decedent. The trust took effect immediately, as the grantor intended, its purpose was not merely to provide for Mabel after the decedent's death, and the transfer was not made in contemplation of death. The Commissioner misinterprets the intended meaning of the deed of trust in two other particulars in order to make two further arguments. He says that the charity was not to take if Mabel died before her mother but, in that case, the corpus would revert to the decedent and, therefore, the transfer was intended to take effect in possession or enjoyment at or after the death of the decedent within the meaning of section 811 (c). That would be a strained, illogical, and unnatural meaning to derive from the words used and no reason appears for supposing that the decedent intended the charity to take only in case Mabel survived her. It is inconceivable that the Courts of Pennsylvania would allow the transfer to the charity to fail merely because the *75 decedent happened to survive Mabel. The Commissioner next argues that the decedent was within the phrase "members of her [Mabel's] immediate family" and by using those words reserved to herself the right to invade the trust corpus for her proper maintenance, support, comfort and well being. There were no "members" of Mabel's immediate family. She lived with the decedent, who was very much the head of the household during her life. Mabel had no plans for acquiring a "family". The bank, which prepared the deed, evidently put the quoted words in as a precaution in case Mabel should marry, adopt a child, or in some other way acquire a "family" of her own. The evidence as a whole shows that the decedent did not intend to benefit in any way from the trust property. She had more than plenty, as had Mabel, but she wanted this trust to be something which Mabel could not possibly lose. Furthermore, the payments in any case would have to be to Mabel, the sole beneficiary, and could not be made to anyone else. It could not be said that the decedent reserved to herself the right to invade the corpus for her own benefit or that enjoyment by the beneficiary depended upon her survival of the decedent. *76 The Commissioner erred, as contended by the petitioner, on the two points in issue. The stipulation settled all other differences between the parties. Decision will be entered under Rule 50.